Filed 8/11/14  P. v. Carrasco CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARIA GUADALUPE CARRASCO,<br><br>    Defendant and Appellant. | B249070<br><br>(Los Angeles County<br>Super. Ct. No. BA389434-02) |

APPEAL from a judgment of the Superior Court of Los Angeles County. David V. Herriford, Judge.  Affirmed as modified.

Michele W. Flynn, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Maria Carrasco appeals from a judgment which sentences her to six years in county jail for transporting six and a half pounds of methamphetamines. We modify the judgment to correct a few clerical errors but otherwise affirm.

## FACTS

In 2009, the Drug Enforcement Agency (DEA) began to investigate David Gonzalez Sanchez, whom they believed to be in the upper-echelons of a drug trafficking organization. The DEA obtained warrants to intercept and monitor 20 different telephone lines, including telephone numbers associated with Sanchez.

Approximately 2,000 telephone calls were monitored. Of particular importance to this matter are 12 intercepted telephone calls, mainly between an unidentified man, UM127,[1] and Sanchez. Because the participants spoke Spanish and often used code to disguise the true topic of the calls, the DEA agent in charge of the investigation testified to the contents of the telephone calls and translated transcripts of the calls were provided to the jury at trial. The DEA agent explained that UM127 operated a drug trafficking cell in Sacramento, California while Sanchez operated out of Los Angeles. Both men were from Michoacan, Mexico, a hub for the La Familia drug cartel.

From November 16 to November 18, 2010, the DEA intercepted a series of calls between UM127 and Sanchez to set up a transfer of narcotics. On November 16, 2010, UM127 alerted Sanchez that they would be going down to Los Angeles from Sacramento sometime that day or the next day. In a November 17, 2010 call with Sanchez, UM127 indicated they were still in Sacramento. When Sanchez asked how many "tickets" or money UM127 intended to bring him, UM127 said he had at least "50" or $50,000, but intended to collect additional outstanding debts from his customers in Sacramento to give to Sanchez. On the morning of November 18, 2010, UM127 told Sanchez he wasn't able to personally come down and instead sent a female courier, "a lady" who "already knows what to do." He also confirmed he was sending $78,000 to Sanchez and verified the purity of the product he was receiving. They discussed the details of the exchange: "the

---

[1] It was later discovered that UM127 was Carrasco's brother-in-law's brother, Julio Diaz Chavez.

lady" would leave a truck in South Gate Park, someone from Sanchez's organization would take it, load the narcotics into a secret compartment "that he already knows how to open," and deliver it back to her. UM127 told Sanchez he expected her to arrive around noon. Carrasco called Sanchez at noon and told him she was playing with her children near a playground.

Montebello police officers, who were working with the DEA, conducted surveillance of the area near South Gate Park on November 18, 2010. An officer observed Carrasco drive a tan F150 truck to South Gate Park with two children. Shortly after Carrasco arrived, a man driving a blue Audi pulled into the parking space next to Carrasco's truck and spoke briefly with her near the playground where her children were playing. Carrasco gave him the keys to the truck and he drove it away, leaving the Audi in the parking lot. Officers observed the man drive the truck to a house and pull into the driveway for 15 minutes, out of view. He then returned the truck to South Gate Park and drove away in the Audi. Carrasco left the park shortly thereafter and made her way back to Sacramento.

The Bakersfield police department had been notified of Carrasco's truck and asked to find a legitimate reason to pull it over. Carrasco was stopped in Bakersfield for speeding and following too closely. According to the officer who made the traffic stop, Carrasco appeared to be nervous—her right hand was shaking uncontrollably and she was speaking in a rapid manner. Carrasco consented to a search of the truck. A canine indicated the presence of narcotics in the truck. Carrasco denied knowing anything about that. She initially told the officer it was her truck when he questioned her about the name on the registration. After the drugs were found, she indicated that the truck was not hers, but that she was borrowing it from her cousin. A search of the truck revealed a hidden compartment in the dashboard that contained six saran-wrapped zip lock bags with approximately a pound of methamphetamine in each. A small sandwich bag contained an additional quarter-pound of methamphetamine. Carrasco and her children were released after the narcotics were found.

3

During the course of the investigation, the DEA seized over 90 pounds of methamphetamine, over 40 pounds of marijuana, and over $200,000 in assets between November 2010 and June 2011. Sanchez was arrested in June 2011. Carrasco was also arrested and charged with conspiracy to commit a crime in violation of Penal Code section 182, subdivision (a)(1) (count 1), possession for sale of methamphetamine in violation of section Health and Safety Code section 11378, and transportation of methamphetamine in violation of Health and Safety Code section 11379, subdivision (a). It was further alleged the methamphetamine exceeded 1 kilogram within the meaning of Health and Safety Code section 11370.4, subdivision (b)(1). The People presented evidence to the jury as described above. Carrasco testified on her own behalf and explained that she did not know about the methamphetamine in the truck. She was merely doing a favor for a friend, who asked her to transport some clothing from Sacramento to Los Angeles for his wife. She frequently traveled to Los Angeles to visit three of her five children, who lived in Perris with her mother because they were unwilling to move to Sacramento with her.

The jury found Carrasco guilty on all three counts and found true the additional allegation that the methamphetamine involved exceeded one kilogram. The trial court denied probation and sentenced Carrasco to a base term of three years in county jail on count 3 for violation of Health and Safety Code section 11379 plus three years for the weight enhancement allegation. Sentencing on the remaining two counts was stayed pursuant to Penal Code 654. Carrasco was granted 153 days credit for time served, including 77 actual and 76 good time credits. The trial court also imposed various fines and fees. Carrasco timely appealed and we appointed counsel to represent her on appeal.

## DISCUSSION

Carrasco's appointed counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) requesting we review the record for arguable issues. Counsel also submitted a declaration stating he has informed Carrasco of his evaluation of the record and advised her she may file a supplemental brief, raising any issues she wished to call to

4

our attention.  We also notified Carrasco by letter of her right to submit any claim, argument, or issue she wished us to review.  We have received no response.

We have independently reviewed the record on appeal and note some discrepancies between the trial court's oral judgment and the clerk's minute order.  Because the minute order does not accurately reflect the trial court's judgment, we order the clerical errors to be corrected as provided in *People v. Mitchell* (2001) 26 Cal.4th 181, 187-188.

The trial court orally imposed, but stayed, the mid-term of three years plus an additional three years on the weight enhancement with respect to count 1 for a total of six years.  The minute order inaccurately reflects a six year enhancement for a total of nine years in county jail for count 1.  Similarly, the trial court orally imposed, but stayed, a mid-term of two years plus three additional years on the weight enhancement with respect to count 2 for a total of five years.  The minute order inaccurately reflects a five year enhancement for a total of seven years for count 2.  Though the sentences on those counts were stayed, the minute order should nevertheless be modified to accurately reflect the trial court's judgment.

The minute order also inaccurately lists the fines and fees orally imposed by the trial court.  Three $40 court operations fees should be imposed pursuant to Penal Code 1465.8, subdivision (a)(1), reflecting a fee for each conviction, rather than two $30 court operations assessments for counts 1 and 3.  Further, three $30 criminal conviction facilities fees should be assessed pursuant to Government Code section 70373, subdivision (a)(1), reflecting one assessment for each conviction.  The two $40 citation processing fees (Pen. Code, § 1463.07) listed in the minute order were not imposed by the trial court as to counts 1 and 3 and should be stricken.  In all other respects, we are satisfied that appointed counsel fulfilled his duty, and that no arguable issues exist. (*Wende, supra*, 25 Cal.3d 436; *People v. Kelly* (2006) 40 Cal.4th 106.)

## DISPOSITION

The minute order is modified as described above.  The trial court shall amend the abstract of judgment accordingly and forward copies to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


                                        BIGELOW, P. J.

We concur:



        FLIER, J.



        GRIMES, J.